NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COMMIL USA, LLC,**
*Plaintiff-Appellee,*

**v.**

**CISCO SYSTEMS, INC.,**
*Defendant-Appellant.*

---

2012-1042

---

Appeal from the United States District Court for the Eastern District of Texas in case no. 07-CV-0341, Magistrate Judge Charles Everingham.

---

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

MARK S. WERBNER, Sayles Werbner, P.C., of Dallas, Texas, filed a petition for rehearing en banc for plaintiff-appellee. With him on the petition were RICHARD A. SAYLES and MARK D. STRACHAN. Of counsel on the petition were LESLIE V. PAYNE, NATHAN J. DAVIS and MIRANDA Y. JONES, Heim, Payne & Chorush, of Houston, Texas.

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, filed a response to the petition for defendant-appellant. With him on the response were MARK C. FLEMING, JONATHAN W. ANDRON, and FELICIA H. ELLSWORTH; and WILLIAM G. MCELWAIN, of Washington, DC. Of counsel on the response were HENRY B. GUTMAN, Simpson Thacher & Bartlett LLP, of New York, New York; and JEFFREY E. OSTROW, HARRISON J. FRAHN, IV, PATRICK E. KING, and JONATHAN SANDERS, of Palo Alto, California.

---

Before RADER, *Chief Judge*, NEWMAN, LOURIE, DYK, PROST, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, and CHEN, *Circuit Judges*.[1]

REYNA, *Circuit Judge*, with whom RADER, *Chief Judge*, NEWMAN, LOURIE, and WALLACH *Circuit Judges*, join, dissents from the denial of the petition for rehearing en banc.

NEWMAN, *Circuit Judge*, with whom RADER, *Chief Judge*, REYNA and WALLACH, *Circuit Judges*, join, dissenting from the denial of the petition for rehearing en banc.

PER CURIAM.

---

# ORDER

A petition for rehearing en banc was filed by plaintiff-appellee, and a response thereto was invited by the court and filed by defendant-appellant. The petition for rehearing en banc was first referred as a petition for rehearing to the panel that heard the appeal, and thereafter the petition for rehearing en banc and response were referred to the circuit judges who are authorized to

---

[1] *Circuit Judge* Hughes did not participate.

request a poll of whether to rehear the appeal en banc.  A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of plaintiff-appellee for panel rehearing is denied.

(2) The petition of plaintiff-appellee for rehearing en banc is denied.

(3) The mandate of the court will issue on November 1, 2013.


FOR THE COURT



October 25, 2013                    /s/ Daniel E. O'Toole
       Date                             Daniel E. O'Toole
                                        Clerk

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COMMIL USA, LLC**,
*Plaintiff-Appellee,*

v.

**CISCO SYSTEMS, INC.,**
*Defendant-Appellant.*

---

2012-1042

---

Appeal from the United States District Court for the Eastern District of Texas in No. 07-CV-0341, Magistrate Judge Charles Everingham.

---

REYNA, *Circuit Judge*, with whom RADER, *Chief Judge*, and NEWMAN, LOURIE and WALLACH, *Circuit Judges*, join, dissenting from the denial of the petition for rehearing en banc.

The *Commil* majority established a substantive, precedential change in patent law by expressly "hold[ing] that evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement." *Commil USA, LLC v. Cisco Sys., Inc.,* 720 F.3d 1361, 1368 (Fed. Cir. 2013). Its analysis may be summed by its expressed view that because "[i]t is axiomatic that one cannot infringe an invalid patent"

there is "no principled distinction between a good-faith belief of invalidity and a good-faith belief of non-infringement for the purpose of whether a defendant possessed the specific intent to induce infringement of a patent." *Id.*

By holding that a good faith belief in the invalidity of a patent may negate the requisite intent for induced infringement, the two-judge *Commil* majority created a new noninfringement defense to induced infringement that is premised on the accused infringer's belief of invalidity. As Judge Newman aptly points out in her dissent, "This absolution applies, according to the panel majority, although the patent receives the presumption of validity, and validity is sustained in litigations." (Newman, J., dissenting from the denial of the petition for rehearing en banc, at 1.)

Because I believe the *Commil* majority opinion is without foundation in law and precedent, and for the reasons stated below, I respectfully dissent from the vote taken of the court to not conduct an en banc review of the majority opinion in *Commil*.

## I.

My primary dispute with the majority holding is that it wrongly rearranges the legal foundation that underpins the enforceability of valid patents and the finding of liability for infringement.

First, the induced infringement statute states simply that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The law recognizes that the statute's use of the words "actively induces" imparts an intent requirement into the statute. As stated by the Supreme Court, "[t]he addition of the adverb 'actively' suggests that the inducement must involve the taking of affirmative steps to bring about the desired result." *Global-Tech. Appliances, Inc. v. SEB*

*S.A.*, 131 S. Ct. 2060, 2065 (2011). In § 271(b), the "desired result" that a party accused of inducement must be affirmatively seeking to bring about is defined in the statute as simply "infringement."

The term "infringement" is used consistently throughout § 271 to mean that all of the limitations of a patent claim are satisfied by an accused product or accused conduct. *See, e.g.*, *TecSec, Inc. v. Int'l Bus. Mach. Corp.*, --- F.3d ----, No. 2012-1415, 2013 WL 5452049, at *13 (Fed. Cir. 2013) (citations omitted) ("An act of infringement occurs when all the elements of a claimed product or method are met by the accused device or process."). In *Global-Tech*, the Court concluded that in order to satisfy the intent element of induced infringement under § 271(b), an accused infringer must possess "knowledge that the induced acts constitute patent infringement," *Global-Tech.*, 131 S. Ct. at 2068, but it did not alter the fundamental meaning of "infringement." Our recent en banc decision in *Akamai* further confirms that "infringement" in the context of "induced infringement" is resolved solely with reference to the limitations of a patent claim. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) ("we hold that all steps of a claimed method must be performed in order to find induced infringement").

The legislative history explains that the language of § 271(b) "recites in broad terms that one who aids and abets an infringement is likewise an infringer." H.R. Rep. No. 82–1923, at 9. Neither the statute nor its legislative history provides that one who knowingly and successfully induces another to engage in conduct that infringes a valid patent can escape liability by showing it held a good faith belief that the patent was invalid. Indeed, the rationale for imposing liability on the party who is inducing infringement is simple: one who causes, urges, encourages, or aids in an infringement is just as, if not

more, culpable for the invasion of the patentee's exclusive rights than those who actually perform the acts of infringement. *See generally Akamai*, 692 F.3d at 1309-13. Yet, under the majority's holding, an accused inducer that is deriving a benefit by knowingly and intentionally inducing an unsuspecting third party to directly infringe patent rights can itself escape liability based on a belief that the patent is invalid while the unsuspecting third party cannot. This situation is directly contrary to the plain language and purpose of the induced infringement statute.

## II.

Second, infringement and invalidity are separate issues under the patent code and our precedent. This is not controversial. We have "long recognized that patent infringement and invalidity are separate and distinct issues." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1365 (Fed. Cir. 2003). This distinction is further reflected in the organization of the patent code, which places the issues of infringement and invalidity in separate "Parts." *Compare* 35 U.S.C. §§ 251-329 (Part III: "Patents and Protection of Patent Rights"), *with* 35 U.S.C. §§ 100-212 (Part II: "Patentability of Inventions and Grant of Patents").

Given this, there is no reasonable basis to impute questions of invalidity or liability into § 271(b) through the term "infringement." If a patent is found invalid, that is a complete defense to liability because it negates the patent's existence and thereby extinguishes any exclusionary rights. Conversely, if there is a patent—i.e., it is not invalid—then the question is merely whether there has been conduct that actively induces acts of infringement *per se*. This too is not controversial under our precedent because we have long recognized that "[t]hough an invalid claim cannot give rise to *liability* for infringement, whether it is infringed is an entirely

separate question capable of determination without regard to its validity." *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) (emphasis added).

Despite that "Supreme Court precedent and our cases make clear that patent infringement and patent validity are treated as separate issues," *Pandrol*, 320 F.3d at 1365, the *Commil* majority nevertheless imputes questions of invalidity into induced infringement under the guise of "intent." It attempts to justify this departure from controlling precedent on the premise that "[i]t is axiomatic that one cannot infringe an invalid patent." *Commil*, 720 F.3d at 1368. But this "axiom" is materially wrong in the present context and does not withstand scrutiny in view of controlling precedent. *See, e.g.*, *Medtronic*, 721 F.2d at 1583. A more accurate statement of our precedent is that *liability* for patent infringement depends on an infringed claim being valid and enforceable; that is, one cannot *be liable for infringement* of an invalid patent.

### III.

Third, the *Commil* majority holding wrongly conflates the defense of noninfringement with the defense of invalidity. "An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement." *Akamai*, 692 F.3d at 1308. The *Commil* majority expands the inquiry regarding noninfringement to include invalidity on grounds that it "see[s] no principled distinction between a good-faith belief of invalidity and a good-faith belief of non-infringement for the purpose of whether a defendant possessed the specific intent to induce infringement of a patent." *Commil*, 720 F.3d at 1368. This statement ignores the statutorily-mandated presumption of validity, *see* § 282(a), in that it sets up all patents as invalid, at least in the mind of the

inducer. In doing so, the majority strikes at the very heart of the presumption of validity by eroding patent rights that have been duly granted by the PTO based solely on an erroneous—albeit good faith—belief that the PTO erred in granting the patent. This has profound and negative implications that are not contemplated by the patent statute.

Conflating infringement and invalidity also unnecessarily complicates the induced infringement inquiry. In this regard, infringement and non-infringement are opposite sides of the same coin whereas infringement and invalidity are altogether entirely different coins. The intent element of § 271(b) is met when the accused infringer acts with actual knowledge of the patent claim and was "actively inducing" conduct that it knew to be within the scope of an asserted claim. *See Akamai*, 692 F.3d at 1308. Whether the accused infringer held a good faith belief that it was inducing conduct that fell outside the scope of the claims is directly relevant to this intent inquiry. But whether the accused infringer held a good faith belief in invalidity—e.g., an erroneous belief regarding obviousness—is wholly unrelated to the accused infringer's conduct vis-à-vis the limitations of a presumptively valid patent claim. These fundamental differences between the defenses provide a reasoned and legally sound basis for differentiating between a good faith belief of non-infringement and a good faith belief in invalidity in the context of induced infringement.

\* \* \*

There exists another axiom of more universal application that is appropriate here: "if it's not broken, don't fix it." The *Commil* majority has strained to fix current law without ever showing exactly what is broken, and its fix has been to create an entirely new infringement defense, a new rule of law.

In addition, the majority does not instruct the lower courts how they are to apply the fix. Is the new rule a question of fact? Is it a question of law? Is it a question of law with underlying factual basis? Should the question of good faith belief of invalidity be tried along with the invalidity issues, or perhaps before any other issues are heard given its determinative effect on the outcome of the case?

A grave concern that I have with the new rule is that it fundamentally changes the operating landscape, much like waking up and unexpectedly finding that the sky is now green. The new rule is a powerful tool in patent litigation in that it establishes an escape hatch from liability of infringement that is not now in the statute. This has a compromising effect on the only axiom that we should all observe, and that is issued patents are presumed valid.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COMMIL USA, LLC**,
*Plaintiff-Appellee,*

**v.**

**CISCO SYSTEMS, INC.,**
*Defendant-Appellant.*

---

2012-1042

---

Appeal from the United States District Court for the Eastern District of Texas in No. 07-CV-0341, Magistrate Judge Charles Everingham.

---

NEWMAN, *Circuit Judge*, with whom RADER, *Chief Judge*, REYNA and WALLACH, *Circuit Judges*, join, dissenting from the denial of the petition for rehearing en banc.

By decision issued June 25, 2013, a split panel announced a change in the law of induced infringement, creating a new rule of law whereby an adjudged inducer of infringement is absolved of liability for infringement if the infringer had a "good faith belief" that the patent it infringed was invalid. This absolution applies, according to the panel majority, although the patent has a statutory presumption of validity, and validity of the patent is litigated and sustained. I explained, in my dissenting

opinion, why this position is contrary to law and precedent. And I took some comfort from the protocol that a panel cannot change the law established by decisions of the court; only the en banc court can do so.

Indeed, it is not "axiomatic that one cannot infringe an invalid patent" as the majority opinion states. Precedent is contrary. *See Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity."); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F. 2d 1524, 1535 (Fed. Cir. 1987) ("The single instruction to the jury that invalid claims cannot be infringed (a nonsense statement), one of many on supposed general principles of patent law, does not operate to convert the interrogatories on infringement into general verdicts which subsumed all of Spectra's invalidity defenses, including best mode."). If the court now wishes to change this law, it must be done en banc. It disserves the public, and diminishes the court, to continue to issue conflicting statements.

Now, however, the full court's majority refusal of en banc review of the panel's ruling adds uncertainty to the law and its application. Investors, competitors, and trial courts cannot be confident as to the law that will be applied by the Federal Circuit. Such destabilization is a disservice not only to patentees but also to the public that benefits from technological advance. A court's creative judicial rulings are readily clarified; our refusal to do so in patent cases not only spawns avoidable litigation but also is a disincentive to industrial innovation.

To compound the inequity, here the panel majority, on remanding for retrial of infringement with the defense that the infringer believed the patent to be invalid, nonetheless does not permit retrial of validity. In the

posture of the remand, the prior jury verdict of validity is the law-of-the-case. However, the issues of infringement and validity are interwoven in the new defense of subjective "belief", and the restricted remand procedure can impart "confusion and uncertainty, which would amount to a denial of a fair trial." *Anderson v. Siemens Corp.*, 335 F.3d 466, 475–76 (5th Cir. 2003). It is only fair that the new jury, at a new trial for determination of this "belief", receives full evidence of the premises. At a minimum, the panel's instructions for limited retrial should receive en banc review.

Thus I must, respectfully, dissent from denial of the request for rehearing en banc.